UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

PAULA M. SADLER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CAUSE NO. 3:19-CV-467 DRL

OPINION & ORDER

Paula M. Sadler seeks judicial review of the Social Security Administration's decision denying her application for disability insurance benefits under Title II of the Social Security Act, *see* 42 U.S.C. § 423(a). Ms. Sadler requests this court to reverse the administrative decision and remand her claim for further consideration. Having considered the underlying record and arguments on review, the court reverses the administrative decision and remands the case.

BACKGROUND

In November 2013, Ms. Sadler filed an application for Social Security disability insurance benefits and widow's insurance benefits, alleging a disability onset date of August 5, 2010 [R. 19]. Her claims were denied [*id.*]. On November 30, 2015, a hearing was held before Administrative Law Judge Shane McGovern [R. 31]. He denied Ms. Sadler benefits, concluding that she was not disabled because she could perform a significant number of jobs in the economy despite the limitations caused by her impairments [R. 29]. Ms. Sadler challenged the ALJ's decision by timely filing a request for review with the Appeals Council [R. 1-6]. The Appeals Council denied review [*id.*]. Because the Appeals Council denied review, the ALJ's decision was the agency's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

Ms. Sadler then filed an appeal here. The court remanded the case to the ALJ pursuant to a joint request for remand [R. 530]. A second hearing took place on November 14, 2018, before ALJ

Romona Scales [R. 485-527]. On March 2, 2018, ALJ Scales again denied Ms. Sadler's claim [R. 449-67]. The Appeals Council didn't review the ALJ's decision. As such, the ALJ's decision was the Agency's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a).

Thereafter, Ms. Sadler timely filed her complaint with an opening brief (ECF 18). The Social Security Administration timely filed a response (ECF 23), to which Ms. Sadler replied (ECF 24). The matter is ripe for disposition.

## STANDARD

The court has authority to review the ALJ's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is such evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and her conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific

2

impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual functional capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Human Servs.,* 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See id.*

The ALJ found that Ms. Sadler satisfied step one because she hadn't engaged in substantial gainful activity since August 5, 2010, the alleged onset date [R. 455]. The ALJ then found that Ms. Sadler had the following severe impairments: bilateral knee osteoarthritis, status post replacement; lumbar spine degenerative disc disease; and depressive disorder [*id.*]. The ALJ found the following non-severe impairments: GERD (gastroesophageal reflux disease), history of urinary tract infections, and tension headaches [*id.*]. Next, the ALJ found that Ms. Sadler's impairments or combination of impairments didn't meet or exceed any of the specific impairments listed that are so severe as to be conclusively disabling [*id.*].

The ALJ then established the following residual functional capacity (RFC) [R. 458]:

> [T]he claimant had the residual functional capacity to perform light work . . . except that she could lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant could stand and/or walk 4 hours and sit up to 6 hours in an 8-hour workday. She could occasionally push and/or pull with the lower extremities. The claimant required the option to alternate sitting/standing for up to 5 minutes but would remain on task at the workstation while doing so. The claimant could never climb ladders, ropes, scaffolds, kneel or crawl, but could occasionally climb ramps, stairs, balance, stoop and crouch. She must avoid all exposure to heavy vibration and to hazards such as moving machinery and unprotected heights. She must avoid concentrated exposure to extreme cold. The claimant could perform simple, routine tasks and instructions, but required work free of fast-paced production or quotas, meaning no tandem tasks, machine regulated work, or hourly production quotas.

At step four, the ALJ determined, based on her RFC findings, that Ms. Sadler was unable to continue performance of her past relevant work [R. 464]. At step five, however, the ALJ found that

considering Ms. Sadler's age, education, work experience, and RFC, there were jobs that exist in the national economy that she could perform [R. 465]. Specifically, the ALJ found that Ms. Sadler could perform the requirements of office clerk (DOT # 239.687-010), information clerk (DOT # 237.367-018), and order clerk (DOT # 324.577-010). Because of her determination at step five, the ALJ found that Ms. Sadler was not disabled [R. 467].

Ms. Sadler says the ALJ made two mistakes that necessitate remand: (1) the ALJ's RFC failed to account for her need to take breaks; and (2) the ALJ failed to satisfy her burden at step 5. The court agrees that the RFC failed to account for Ms. Sadler's need to take breaks at her workplace, so remand is warranted.

The RFC denotes an individual's ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," which is "8 hours a day, for 5 days a week." SSR 96-8p, 1996 WL 374184 at 1 (July 2, 1996). It represents "the maximum that a claimant can still do despite [her] . . . limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). It must be "based upon the medical evidence in the record and other evidence, such as testimony by the claimant or [her] friends and family." *Id.* at 676. The RFC must discuss why reported symptom-related functional limitations or restrictions can or can't be accepted as consistent with the medical and other evidence. SSR 96-8p, 1996 WL 374184 at 7. An ALJ must "consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms." SSR 16-3p, 2017 WL 5180304 at 7 (Oct. 25, 2017).

Ms. Sadler says the ALJ should have included an RFC that accounted for her need to take breaks. In support, she relies on her own testimony that she spent approximately four hours of her day working and the remainder of it resting (R. 503) and the testimony of her employer that said she was allowed "to take unrestricted breaks throughout the day" (R. 298). The letter provided a description of her daily work activities:

> Her duties consist of having the parking lot set up by 6:50 am for student arrival, rearrange the cones and block off the parking lot for the children's recess by 8:15 am, sweep and/or mop the gym floor before lunch which she does between 8:30/9:00 am, roll out the lunch tables for lunch by 10:30 am, then clean up the gym after lunch for P.E. cases by 12:30 p.m.
>
> Starting at 3:00 pm she begins to help the evening janitor by emptying classroom trash cans on the upper level, sweeping the hallway, and vacuuming our 4 upstairs classrooms with carpet. She usually has this task completed by 4:00 pm.
>
> Between her morning duties and afternoon duties we have Paula stay on site for emergencies. Being a school, such emergencies are vomit, overflowing toilets or urinals, and any spills that may occur. We need someone here on campus to take care of any messes that may occur. We are aware of Paula's limitations and allow her to take *unrestricted breaks* throughout the day.

[R. 298 (emphasis added)].

The ALJ said there was an inconsistency between Ms. Sadler's testimony and her employer's letter about whether she only worked four hours a day:

> The undersigned has also considered the letter from Dale Zylstra from St. Paul School. The letter indicates that the employer was aware of the claimant's limitations and allowed her to take unrestricted breaks throughout the day. The undersigned gives some weight to the letter regarding the claimant's ability to take breaks. However, the claimant also testified that she would be working 4 hours during the day and then sitting and resting the remaining 4 hours. Mr. Zylstra's letter, which sets forth a chronology of the claimant's duties, when they were performed, and the length of time needed or given to perform them, suggests that she was performing actual work-related duties for longer than 4 hours despite taking unrestricted breaks.

[R. 464]. Though the ALJ acknowledged that the letter referred to unrestricted breaks throughout the day, she did not include any necessary breaks in the RFC, instead only saying that Ms. Sadler is limited to standing/walking up to 4 hours a day and sitting up to 6 hours a day [R. 458].

The ALJ didn't adequately explain how these pieces of evidence were inconsistent. Ms. Sadler spent over eight hours a day at the school and was on call during portions of that time for "emergencies," but that doesn't mean she was actively working during all that time. The letter showed a time gap of 2.5 hours between 12:30 pm to 3:00 pm with no specific duties, other than perhaps dealing with emergencies. There was also a two-hour period between setting up the gym for lunch by

5

10:30 am and cleaning up the gym after lunch by 12:30, which would include a period of no duties while students ate their lunch. Given these time gaps, there isn't a clear inconsistency between her testimony and the letter, and the record is devoid of development that would create a logical bridge to that conclusion.

The letter explicitly recognized Ms. Sadler's need for "unrestricted breaks throughout the day." Though it does say that Ms. Sadler stayed on site for emergencies throughout the day, the letter doesn't indicate that she was actively working during her off-hours or without unrestricted breaks. Indeed, the same paragraph notes that she was still taking *unrestricted* breaks while at work, so she wasn't actively working all that time. On this record, then, it isn't clear how the ALJ determined that Ms. Sadler's testimony conflicted with Mr. Zylstra's letter.

The ALJ didn't give proper weight to Ms. Sadler's extensive breaks and preferential treatment at the workplace. *See Vanprooyen v. Berryhill*, 864 F.3d 567, 571 (7th Cir. 2017); *see also* SSR 85-16 ("Information concerning an individual's performance in any work setting (including sheltered work and volunteer or competitive work), as well as the circumstances surrounding the termination of the work effort, may be pertinent in assessing the individual's ability to function in a competitive work environment."). A claimant with a good work record, who works despite the pain they are suffering, is entitled to "substantial credibility when claiming an inability to work because of a disability," but the ALJ didn't give Ms. Sadler that benefit here. *See Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016); *see also Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("a claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms").

The Commissioner attempts to gloss this mistake by pointing out that Mr. Zylstra's letter was only one factor in the overall consideration of Ms. Sadler's RFC, and then points to other pieces of medical evidence he says supports the ALJ's finding. The ALJ's opinion isn't clear, though, on whether

6

the ALJ would have still made a finding of no disability had the alleged inconsistency not been found. The court can't say the error was harmless. *See Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003).

The ALJ failed to build a logical bridge from the evidence regarding Ms. Sadler's need to take unscheduled breaks and the absence of any such breaks in the RFC. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). The court can't say the error wasn't harmless. Accordingly, remand is required. On remand, the ALJ should develop the record here and more elaborately explain how she found an inconsistency between Ms. Sadler's testimony and the letter. Because a revised RFC would alter the analysis on Ms. Sadler's second objection, the court won't address that objection here.

## CONCLUSION

Accordingly, the court GRANTS Ms. Sadler's motion (ECF 18) and REMANDS the case for further proceedings.

SO ORDERED.

August 31, 2020                                     *s/ Damon R. Leichty*
                                                    Judge, United States District Court